UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIOVANNY HERNAN ORTEGA, | Case No. 3:18-cv-03228-WHO |
| Plaintiff, | |
| v. | **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |
| ERIK BONNAR, et al., | Re: Dkt. No. 1 |
| Defendants. | |

Petitioner Giovanny Hernan Ortega is a 43-year-old native of El Salvador who has been in the United States since 1990. After a juvenile conviction and more than two decades behind bars, he was released to Immigration and Customs Enforcement ("ICE") custody in April 2017. In January 2018 he was released on bond, and since that time he has been living with his wife, spending time with family, working, and developing ties with his community. Before me is Ortega's petition for a writ of habeas corpus, seeking an order permanently enjoining the Department of Homeland Security ("DHS") defendants, including ICE, from re-arresting him unless and until a hearing, with adequate notice, is held in Immigration Court to determine whether his bond should be revoked or altered. Because Ortega has a liberty interest in remaining on bond and the *Mathews* factor support his as-applied due process challenge, the petition is GRANTED.

## BACKGROUND

Ortega was born in El Salvador and came to the United States as a teenager in 1990 through his mother's asylum application. Declaration of Judah Lakin ISO Petition ("Lakin Decl. I") [Dkt. No. 9] Decl. I Ex. C (Notice to Appear). On October 1, 1991 Ortega became a lawful permanent resident. *Id.*; Declaration of Eddie Robinson ("Robinson Decl.") [Dkt. No. 18-1] ¶ 3.

In March 1994, Ortega pleaded nolo condere to seven counts of attempted murder, committed when he was 16 years old. Declaration of Giovanny Ortega ISO Petition ("Ortega Decl. I") [Dkt. No. 9] ¶ 2. In January 1995, he was sentenced to 31 years in prison. *Id.*; Lakin Decl. Ex. C. He spent two years in juvenile hall and 22 years in prison. Ortega Decl. ¶ 3.

On April 20, 2017, Ortega was released into ICE custody. *Id.*; Robinson Decl. ¶ 4. ICE initiated removal proceedings against him as an alien convicted of an aggravated felony in violation of Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"). Robinson Decl. ¶ 5. At a May 2017 hearing, Ortega conceded removability but indicated that he would seek relief under the Convention Against Torture ("CAT") because he feared returning to El Salvador. *Id.* ¶ 6; Ortega Decl. I ¶ 4; Lakin Decl. ¶ 7. The Immigration Judge ("IJ") denied his application for CAT and ordered him removed. Robinson Decl. ¶ 7; Ortega Decl. I ¶ 4. Ortega appealed to the Board of Immigration Appeals ("BIA"), and the BIA affirmed the IJ's decision in May 2018. Robinson Decl. ¶¶ 7, 12, Ex. D (BIA order affirming order of removal). Ortega then filed a petition for review with the Ninth Circuit. *Id.* ¶ 15.

In January 2018, Ortega appeared before an IJ for a bond hearing because he had been detained for more than 180 days. *Id.* ¶ 8; Ortega Decl. I ¶ 5. The IJ granted Ortega's release from custody upon posting of a $35,000 bond. Robinson Decl. ¶ 8; Ortega Decl. I ¶ 5. Ortega's wife Carolyn Ortenburger posted the bond, and on January 31, 2018 he was released from custody. Ortega Decl. ¶ 5; Lakin Decl. Ex. G (bond paperwork).

On March 13, 2018, ICE filed a motion to reconsider the bond decision in the wake of *Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018). Robinson Decl. ¶ 9. Ortega did not receive notice. Ortega Decl. I ¶ 10; Lakin Decl. I ¶ 14. On April 6, 2018, the IJ granted ICE's motion and vacated the bond order in part because Ortega had not responded. Robinson Decl. ¶ 10. Robinson Decl. Ex. B (order granting motion to reconsider). On April 25, ICE filed an unopposed motion to vacate the IJ's second bond order along with a request that the April 6 bond order be reinstated, and the IJ granted that those requests.[1] Robinson Decl. ¶¶ 11, 13, Ex. C (motion to vacate and

---

[1] By that time, Ortega had filed a petition for habeas relief in this district along with a motion for a temporary restraining order preventing DHS from re-detaining him until after a hearing. Lakin

reinstate), Ex. E (order reinstating bond).

On May 30, 2018, Ortega filed the instant petition for writ of habeas corpus along with a motion for a temporary restraining order. Dkt. Nos. 1, 3. I heard argument on the temporary restraining order the following day and ordered that ICE not re-detain Ortega pending argument on a preliminary injunction. Dkt. No. 13. After the parties fully briefed the issue, I heard argument again on June 12, 2018. Dkt. No. 20. The record showed that Ortega was complying with the conditions of his release, working, living with his wife, and undergoing counseling. *See* Hearing Transcript ("Hr'g Tr.") [Dkt. No. 23] 6:24-7:2. I determined that Ortega's as-applied due process challenge was likely to succeed because the private interest was strong, the governmental interest was low, and the risk of erroneous deprivation was high. *Id.* at 7:20-25. Finally, the balance of hardships tipped heavily in Ortega's favor. *Id.* at 8:8-11. Accordingly, I granted Ortega's motion for preliminary injunction. Dkt. No. 21. I enjoined the defendants, including ICE, from re-arresting Ortega unless and until a hearing, with adequate notice, was held in Immigration Court to determine whether his bond should be revoked or altered. The government appealed the preliminary injunction to the Ninth Circuit but later moved to dismiss that appeal, which the Ninth Circuit granted on April 3, 2019. Lakin Decl. I Ex. PP.

Now before me is the petition itself. The parties' recent briefing reveals what has occurred since I granted the preliminary injunction. Over the course of nearly two years since his release from ICE custody, Ortega has been working Adventure's Edge, an outdoor retailer with locations in Eureka and Arcata, California. Declaration of Giovanny Ortega ISO Traverse ("Ortega Decl. II") [Dkt. No. 41] ¶ 7. In addition to working in sales and customer service (among other responsibilities), he completed a two-week training to become a bike mechanic. *Id.* He now works several days a week as a mechanic. *Id.*

Ortega is also active in his community, from volunteering to participating in cycling events. *Id.* ¶¶ 8, 14. His relationship with his wife of 18 years has deepened in the nearly two years that they have been able to live together, and he has developed close friendships as well. *Id.*

Decl. I ¶ 18. After the IJ reinstated the bond, Chief Judge Phyllis J. Hamilton dismissed the petition pursuant to the parties' stipulation. *Id.*

United States District Court
Northern District of California

¶¶ 9-10, 12-13; *see* Declaration of Carolyn Ortenburger ISO Traverse [Dkt. No. 41] ¶¶ 2, 7.  He has also spent time with his mother, whom he helped through her husband's death, his niece and her children, and his mother-in-law, among other family members.  Ortega Decl. II ¶¶ 15-17.  He continues to work with the same therapist he has been seeing since May 2017, with appointments on a weekly basis.  *Id.* ¶ 18; *see generally* Declaration of David Johnston, Traverse Ex. C [Dkt. No. 41].

During this time, Ortega has also maintained perfect compliance with the requirements of ICE's Intensive Supervision Alien Program ("ISAP").  *Id.* ¶ 4; *see* Lakin Decl. Exs. H (Individual Service Plan with ISAP), I (GPS agreement).  He is now required to report in person only every eight weeks, rather than every week.  Ortega Decl. II ¶ 4.  He and his wife drive five hours each way to attend the in-person appointments.  *Id.*  Because his GPS ankle monitor was causing medical problems for his ankle and foot, Ortega is now subject to phone monitoring instead.  *Id.*  He is also complying with the conditions of his parole, which include progress reports, maintaining employment, home visits, and remaining violation free.  *Id.* ¶ 6.

## LEGAL STANDARD

28 U.S.C. section 2241 grants federal courts the authority to grant writs of habeas corpus to an individual in custody if such custody is a "violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A person need not be physically imprisoned to be in custody under the statute; instead, habeas relief is available where the individual is subject to "restraints not shared by the public generally."  *Jones v. Cunningham*, 371 U.S. 236, 240 (1963).

## DISCUSSION

Ortega brings an as-applied due process challenge to the DHS's ability to re-arrest him without a hearing before an IJ to determine whether there has been a material change of circumstances.  The government mounts three arguments in opposition to Ortega's petition.  First, I lack jurisdiction to review bond revocation under the relevant statutes because such a decision is entirely discretionary.  Second, due process does not attach because Ortega has no liberty interest.  Third, even if due process attaches, under *Mathews* Ortega is not entitled to the process he seeks.

4

## I.     JURISDICTION

The government raises two jurisdictional challenges to the petition.  First, I cannot review a discretionary decision by the DHS and second, Ortega's claim is not ripe.  I considered these same arguments during the preliminary injunction phase of this case, and my view on them has not changed.

### A.  Statutory Framework

According to the government, district courts cannot review discretionary decisions by DHS.  Return 6.  Ortega counters that none of the statutes the government cites bar judicial review of the constitutional claim he raises in the petition before me.  Traverse 4-5.

Under 8 U.S.C. § 1226(b) and 8 C.F.R. 242.2(c), the DHS has authority to revoke a noncitizen's bond or parole "at any time," even if that individual has previously been released.  The BIA has placed the following limitation on this authority:  "where a previous bond determination has been made by an immigration judge, no change should be made by [the DHS] absent a change of circumstance."  *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981).  In practice, the DHS re-arrests individuals only after a "material" change in circumstances.  *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

According to the government, the DHS can exercise its discretion to re-arrest Ortega under the above statutory authority, and pursuant to section 1226(e),[2] I lack jurisdiction to review such a determination.[3]  But the law is clear that "[a]lthough § 1226(e) restricts jurisdiction in the federal courts in some respects, it does not limit habeas jurisdiction over constitutional claims or questions

---

[2] "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."  8 U.S.C.A. § 1226(e).

[3] The government also argues the merits of the presence of material changed circumstances, namely by asserting that the BIA's decision affirming the IJ's order of removal was a material change that could increase, for example, the risk of flight.  *See* Return 7.  The question before me is not whether there has been a material change of circumstances such that Ortega's re-arrest would be warranted; the question is who should make that decision as part of what process due to him.  *See* Traverse 5.

of law." *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011). Further, "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017). Ortega does not challenge his initial detention or bond decision; instead, he raises an as-applied constitutional due process challenge to the government's ability to re-detain him without a hearing.[4] *See* Reply TRO 3. Accordingly, I have jurisdiction over his claim.

### B. Whether the Claim is Ripe

The government asserts that Ortega's due process claim is not ripe because he is not in detention and cannot claim that he has been detained for a prolonged period. Return 12-14. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks and citation omitted). As I determined when granting a preliminary injunction a year and a half ago, Ortega's claim is ripe. Throughout this case, the government has "refused to provide any assurance" that Ortega will not be re-arrested. Reply TRO 4. The response to the habeas petition lays out the government's view that the DHS has unreviewable discretionary authority to re-arrest Ortega in the event of material changed circumstances, along with its view that material changed circumstances already exist. Further, Ortega seeks a pre-deprivation hearing; he can enforce that right only by bringing a challenge now, prior to being re-arrested. For all of these reasons, I have jurisdiction over Ortega's petition.

## II. DUE PROCESS INQUIRY

Ortega asserts that he has a liberty interest in remaining on bond, and due process entitles him to a hearing with an IJ prior to re-arrest.

### A. Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533

---

[4] The government argues that despite the claim's label, Ortega in fact "disagrees with ICE's potential discretionary determination that the loss of his appeal before the BIA is a changed circumstance and seeks to challenge that determination by calling it a due process violation." Return 9. I disagree with this characterization of his petition.

U.S. 678, 690 (2001). The government argues that Ortega has no liberty interest because due process does not attach to a benefit granted in the government's discretion. Return 9-10. But the fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest.[5] *See Young v. Harper*, 520 U.S. 143, 150 (1997) (rejecting an argument that a preparolee does not enjoy the same liberty interest as a parolee because the governor could exercise discretion to deny parole); *Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1001 (N.D. Cal. 2018) (Corley, J.) (considering a habeas petition based on due process where the IJ had made a discretionary decision). Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (parolee); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (probation). The cases the government cites deal with different contexts than the one at issue here, namely release from detention.

## B. *Mathews* Test

In *Mathews v. Eldridge*, the Supreme Court outlined three factors relevant for the due process inquiry: (i) the private interest, (ii) the risk of an erroneous deprivation and the value of additional procedures sought, and (iii) the government's interest, including the burdens associated with the additional procedures sought. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The government argues that a pre-deprivation hearing is not required under these factors because the procedures Ortega will be afforded upon re-arrest are constitutionally adequate. Specifically, if re-arrested, he could challenge the custody determination in front of an IJ.

Ortega has a substantial private interest in remaining on bond, and that interest has only grown in the 18 months since I granted a preliminary injunction in this case. He is living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community.

The government's attempts to discount the private interest at issue are unpersuasive. First

---

[5] Ortega also argues that the government's arguments fail because the IJ's decision to release him was not purely discretionary. Reply TRO 8-10. Because I side with Ortega for other reasons, I need not consider this argument.

the government argues that Ortega's liberty interest is lesser than that at issue in *Morrissey* because of his conviction and his noncitizen status. Return 15-16. I disagree. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Ortega has already completed his criminal sentence, and at issue now is a civil detention. Given the civil context, his liberty interest is arguably greater than the interest of parolees in *Morrissey*. *See Morrissey*, 408 U.S. at 487.

The remaining two factors also weigh in favor of Ortega. The risk of erroneous deprivation is high especially given that the government's briefing makes clear that it believes a material change in circumstances has already occurred. In arguing that the risk is low, the government merely points out the avenues Ortega would have to challenge ICE's decision in the event that it decides to re-arrest him. *See* Return 16. Further, the safeguard Ortega proposes—a decision from a neutral adjudicator—could provide substantial value. Finally, the government's interest in re-arresting Ortega without a hearing before an IJ is low. The allegedly material change of circumstances—the Order of Removal—occurred over a year and a half ago, and during all that time, Ortega has strictly complied with all the requirements of his release. If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low. Accordingly, the *Mathews* factors favor Ortega.

## CONCLUSION

For the reasons set forth above, Ortega's petition for writ of habeas corpus is GRANTED. The defendants, including ICE, are permanently ENJOINED from re-arresting Ortega unless and until a hearing, with adequate notice, is held in Immigration Court to determine whether his bond should be revoked or altered.

**IT IS SO ORDERED.**

Dated: November 22, 2019

William H. Orrick
United States District Judge